**FEDERAL DEPOSIT INSURANCE COR-PORATION, a corporation organized and existing under the laws of the United States of America, Plaintiff-Appellant,**

v.

**SUMNER FINANCIAL CORPORATION, a Florida corporation, Defendant-Appellee.**

No. 71–1317.

United States Court of Appeals, Fifth Circuit.

Nov. 30, 1971.

Rehearing and Rehearing En Banc Denied Jan. 7, 1972.

---

Frank X. Friedmann, Jr., Rogers, Towers, Bailey, Jones & Gay, Jacksonville, Fla., Reford J. Wedel, Deputy Gen. Counsel, Myers N. Fisher, Asst. Gen. Counsel, Daniel Wm. Persinger, Atty., Federal Deposit Insurance Corporation, Washington, D. C., for plaintiff-appellant.

Harris Dittmar, Jacksonville, Fla., for defendant-appellee; Bedell, Bedell, Dittmar, Smith & Zehmer, Jacksonville, Fla., of counsel.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GEWIN, Circuit Judge:

The Federal Deposit Insurance Corporation (FDIC) appeals from an order dismissing its suit against Sumner Fi-

nancial Corporation (Sumner) seeking to enjoin Sumner from violating the FDIC regulations pertaining to the advertisement of interest on deposits in insured member banks.[1] The district court ordered FDIC's complaint dismissed "because it has not been made to appear that plaintiff has statutory authorization to seek injunctive relief to enforce its regulations under the facts of this complaint."

On Appeal FDIC contends that the only issue presented is their capacity to sue for injunctive relief. Sumner argues that FDIC lacks statutory authority to regulate independent money brokers such as Sumner. Because the precise ruling of the district court is unclear and in the interest of economy of judicial time,[2] we proceed to consider both questions and conclude that the case must be reversed and remanded.

The facts alleged in FDIC's complaint are considered to be admitted for the purposes of this review of the court's order granting Sumner's motion to dismiss. FDIC claims that Sumner is a money broker who in part solicits, directly and indirectly, individuals, organizations and business entities to purchase certificates of deposit, letters of credit and other deposit instruments from insured nonmember banks. The deposits are represented by Sumner to bear more than the legal rate of interest.[3] Such solicitation is often connected, directly or indirectly, with the solicitation of an individual, organization or business entity who desires to borrow money from or establish a compensating balance with the nonmember bank accepting the deposit.

FDIC further alleges that Sumner has violated FDIC regulations pertaining to the advertisement of interest on deposits by distributing written documents to investors and by orally soliciting deposits from investors or their agents representing that insured nonmember banks would pay more than the legal rate of interest on deposits. FDIC complains that the widespread use of brokered funds by insured banks has been responsible for abuses in banking, particularly in the area of loans by banks of brokered funds to non-credit worthy borrowers. These practices, it is claimed, have contributed to recent bank closings with consequent losses to depositors, creditors, shareholders, the general public and FDIC. FDIC specifically alleges that Sumner's activities in brokered deposits directly contributed to the closing of the Peoples State Savings Bank of Auburn, Michigan. FDIC asks that Sumner be enjoined from violating the FDIC regulation at 12 C.F.R. section 329.8(g) (1971) which binds any person or organization soliciting deposits for an insured nonmember bank to the same advertising rules applicable to such banks.

FDIC contends that it has no adequate remedy at law and that it and the general public, which FDIC is obligated to protect, will be irreparably damaged unless Sumner is enjoined. Sumner's acts are alleged to be frustrating the intent of Congress and seriously impairing FDIC in performing its regulatory responsibilities.

## I.

At the threshold we must consider whether FDIC has any power whatsoever to regulate the activities of a nonbank entity which is engaged in the business of soliciting deposits for regulated banks. Sumner argues that such regulation constitutes a statutorily unsupported extension of the FDIC's authority to regulate bank activities and that the questioned regulation amounts to an attempt to regulate the money broker in-

---

1. An insured nonmember bank is not a member of the Federal Reserve System, but is insured by the Federal Deposit Insurance Corporation.

2. *See e. g.*, Blaney v. Florida National Bank at Orlando, 357 F.2d 27, 28 (5th Cir. 1966).

3. 12 C.F.R. § 329.6 (1971). If accepted by an insured nonmember bank these deposits would constitute a violation of the FDIC regulation fixing the maximum rates of interest.

dustry. If such an extension is permitted, Sumner contends, the FDIC could equally as well self-extend its authority to regulate all members of the public as bank depositors that do business with insured nonmember banks.

We find that such an argument requires an unreasonble interpretation of the language of the regulation:

(g) *Solicitation of deposits for banks.* Any person or organization which solicits deposits for an insured nonmember bank shall be bound by the rules contained in this section with respect to any advertisement, announcement or solicitation relating to such deposits. No such person or organization shall advertise a percentage yield on any deposit it solicits for an insured nonmember bank which is not authorized to be paid and advertised by such bank." 12 C.F.R. section 329.8(g) (1971)

A person or organization who merely deposits money or "does business" with an insured nonmember bank does not fall within the regulation. On its face, the regulation seeks to prevent direct circumvention of the FDIC's regulatory scheme through the use of non-bank entities to solicit deposits for an insured nonmember, hence, regulated banks.

In this regard the regulation is fully supported by the language and Congressional history of the statute. 12 U.S.C.A. section 1828(g) (1969), as amended (Supp.1971), upon which the regulation is based, provides in relevant part:

"The Board of Directors (of the FDIC) may from time to time, after consulting with the Board of Governors of the Federal Reserve System and the Federal Home Loan Bank Board, prescribe rules governing the payment and advertisement of interest on deposits, including limitations on the rates of interest or dividends that may be paid by insured nonmember banks * * * on time and savings deposits. * * *"

This authority was conferred upon the FDIC by Section 2(b) of the Act of September 21, 1968 (Public Law 90–505, 82 Stat. 856) and has now been continued to June 1, 1973.[4]

The specific grant of authority to "prescribe rules governing the payment and advertisement of interest on deposits * * *" is not limited by its terms to advertisements made only by banks. The same section of the Act provides:

"The Board of Directors (of the FDIC) is authorized for the purpose of this subsection to define the terms 'time deposits' and 'savings deposits', and to determine what shall be deemed a payment of interest, and to prescribe such regulations as it may deem necessary to effectuate the purposes of this subsection and to prevent evasions thereof. * * *" 12 U.S.C.A. Section 1828(g) (1969) as amended (Supp.1971)

This broad grant of discretionary power over advertisement is supplemented by 12 U.S.C.A. § 1819 Seventh and Tenth (1969). Section 1819 Seventh provides that FDIC is authorized "To exercise by its Board of Directors, or duly authorized officers or agents, all powers specifically granted by the provisions of this chapter, and such incidental powers as shall be necessary to carry out the powers so granted." Section 1819 Tenth provides that FDIC is authorized "To prescribe by its Board of Directors such rules and regulations as it may deem necessary to carry out the provisions of this chapter."

The Report of the House Committee on Money and Banking on Public Law 90–505 reflects the Committee's concern with moderating excessive competition for consumer savings H.R.Rep.No.1814, 90th Cong., 2d Sess. (1968), U.S.Code Cong. & Admin.News 1968, p. 3587. The report of the Senate Committee accompanying the Senate version of Public Law 90–505 states:

"(T)he Committee approved an Amendment offered by Senator Prox-

4. Act of May 18, 1971, Public Law 92–15, 85 Stat. 38.

mire authorizing the bank supervisory agencies (including FDIC) and the Federal Home Loan Bank Board to 'promulgate rules governing the payment of interest on deposits.' The existing law extends only to the establishment of maximum ceilings on deposits. The Amendment is intended to clarify the authority of the financial agencies to issue rules and regulations to prohibit any misleading and deceptive advertising concerning rates paid on time and savings deposits." S.Rep.No.1343, 90th Cong., 2d Sess. 5 (1968).

Following enactment of Public Law 90–505, the Board of Directors of FDIC proposed 12 C.F.R. Section 329.8(g) as part of a set of rules designed to implement its new authority to govern the advertisement of interest on deposits. The accompanying statement noted:

"(T)he (proposed) regulations are made expressly applicable to persons or organizations who solicit deposits for insured non-member banks in advertisements relating to such deposits. This requirement would prevent brokers from advertising a percentage yield on deposits solicited for insured non-member banks, which is in excess of the percentage yield which such banks themselves are permitted to advertise." 34 Fed.Reg. 6199 (1969)

■ In construing this statute we feel it is proper to show great deference to the interpretation given the statute by the officers or agency charged with its administration.[5] Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 16, 13 L.Ed.2d 616, 625 (1965); United States v. Chicago, 400 U.S. 8, 91 S.Ct. 18, 27 L.Ed.2d 9, 12–13 (1970); Pan American World Airways, Inc. v. C.A.B., 129 U.S.App.D.C. 159, 392 F.2d 483, 496 (D.C.Cir.1968). Deference is particularly appropriate where the administrative practice at stake involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new. Power Reactor Development Co. v. Int. Union of Elect., Radio & Machine Workers, 367 U.S. 396, 408, 81 S.Ct. 1529, 6 L.Ed.2d 924, 932 (1961). The construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong. Red Lion Broadcasting Co. v. F.C.C., 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed. 2d 371, 384 (1969).

■ This Court does not view FDIC's construction of Public Law 90–505—authorizing regulation of advertising of interest on deposits by those who solicit deposits for insured nonmember banks as well as by the banks themselves—to be unwarranted or unreasonable. We find 12 C.F.R. section 329.8(g) on its face to be fairly supported by 12 U.S.C.A. § 1828(g) and to constitute a reasonable exercise of the administrative power entrusted to the FDIC by Congress.

In this regard the present case is distinguishable from Investment Company Institute v. Camp, 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971) cited by Sumner. In Camp a divided Court invalidated a regulation promulgated by the Comptroller authorizing bank investment funds. The Court said such bank activity appeared to be clearly prohibited by the Glass-Steagall Act and noted that the Comptroller had promulgated the regulation without opinion or accompanying statement.[6]

5. The fact that FDIC is a corporation chartered by Congress instead of a traditional administrative agency does not alter the force of the policy to liberally construe statutes providing regulatory mechanisms to effectuate the purposes of the act.

6. "It is the administrative official * * * who possess the expertise which can enlighten and rationalize the search for the meaning and intent of Congress. Quite obviously the Comptroller should not grant new authority to national banks until he is satisfied that the exercise of this authority will not violate the intent of the banking laws."
401 U.S. at 628, 91 S.Ct. at 1098, 28 L.Ed.2d at 377.

Nor are we persuaded that this court's recent opinion in Mourning v. Family Publications Service, Inc., 449 F.2d 235 (5th Cir. 1971), should control here. In *Mourning* a panel of this court held the Federal Reserve Board had overstepped its statutory authority under the Truth-in-Lending Act by regulating transactions not involving the imposition of a finance charge. The court concluded that the presence of a finance charge was one of three essential elements required for a transaction to fall within the scope of the Act. Sumner argues that in order for the FDIC to regulate advertising of bank deposit interest rates it is essential that the advertisement be by an insured nonmember bank.

The test in *Mourning*, as in this suit, is whether the regulated activity falls within the scope of the statute. The Federal Deposit Insurance Act appears to authorize regulation of advertising of interest rates on deposits in insured nonmember banks whether done by such a bank or *for* such a bank. Since Congress has entrusted the FDIC with the regulation of these bank interest rates and the advertisement of these rates, the FDIC has the power to make such rules as are reasonable and necessary to effectuate the purposes of the act.

## II.

Having concluded the FDIC has the power under the act to regulate deposit interest rate advertisements made for an insured nonmember bank, we turn to Sumner's second contention that the FDIC is not authorized to seek injunctive relief in the enforcement of this regulation. Sumner asserts that if FDIC seeks to regulate Sumner's activities as one who is advertising for a regulated bank, the FDIC is limited to the remedies specifically prescribed in the statutes and that the statutes do not provide for injunctive relief with respect to the matters alleged in the complaint.

The Federal Deposit Insurance Act gives the FDIC the power to sue and be sued, complain and defend, in any court of law on equity, state or federal.[7] The act further provides specific remedies and penalties to be used in the enforcement of the act. These remedies include fines,[8] assessments,[9] criminal penalties,[10] termination of insured status,[11] forfeiture of rights,[12] cease and desist orders,[13] and removal of bank officers.[14] In three instances the act provides that the FDIC may seek injunctive relief: to compel reports of condition;[15] to enforce cease and desist orders;[16] and to restrain violation of the statute and regulations pertaining to certain uninsured banks.[17] Sumner argues that the subsection of the statute upon which the FDIC has based the regulation of bank interest advertisement provides only for a $100 penalty against the offending bank.[18] They contend that to permit the FDIC to seek injunctive relief here would discredit and render meaningless the Congressional scheme of remedies and further burden the federal courts.

After a careful review of the briefs of the parties and the authority

7. 12 U.S.C.A. section 1819 Fourth (1969).

8. 12 U.S.C.A. sections 1817(a) (1); 1828 (a), (g), (h); 1829 (1969) as amended (Supp.1971).

9. 12 U.S.C.A. section 1817(g) (1969).

10. 12 U.S.C.A. sections 1818(j), 1828(b) (1969).

11. 12 U.S.C.A. section 1818(a) (1969).

12. 12 U.S.C.A. section 1817(h) (1969).

13. 12 U.S.C.A. section 1818(b) and (c) (1969).

14. 12 U.S.C.A. section 1818(e) through (h) (1969).

15. 12 U.S.C.A. section 1817(f) (1969).

16. 12 U.S.C.A. section 1818(d) (1969).

17. 12 U.S.C.A. section 1828(g) (1969) as amended (Supp.1971).

18. "For each violation of any provision of this subsection or any lawful provision of such regulations relating to the payment of interest or dividends on deposits or to withdrawal of deposits, the offending bank shall be subject to a penalty of not more than $100, which the Corporation may recover for its use." 12 U.S.C.A. section 1828(g) (1969) as amended (Supp.1971).

they cite, this court is compelled to disagree. We conclude that the specific statutory provisions granting the FDIC the power to levy fines and to employ administrative sanctions against offending banks and their officers is supplemental to the general grant of power to the FDIC to sue and be sued, in any court of law or equity, as required for the administration of the responsibilities entrusted to the corporation by Congress.

■ Although most of the cases construing a "sue and be sued" clause have arisen within the context of a suit against the administrative agency, the courts have consistently viewed the clause as broadly waiving governmental immunity from suit. Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939). The clause has been held to embrace all civil process incident to the commencement or continuance of legal proceedings, including garnishment, Federal Housing Administration Region No. 4 v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940) and award of costs, Reconstruction Finance Corp. v. J. G. Menihan Corp., 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595 (1941).

> "(I)n absence of special circumstances, we assume that when Congress authorized federal instrumentalities of the type here involved to 'sue and be sued' it used those words in their usual and ordinary sense."

*Burr*, 309 U.S. at 246, 60 S.Ct. at 491, 84 L.Ed. at 729.

We have found no authority which indicates that the "sue and be sued" clause should be read more narrowly when the corporation is suing instead of being sued. There is authority that the mere failure of Congress to grant specific authorization to seek injunctive relief does not manifest an intent thereby to preclude resort to that remedy. Walling v. Brooklyn Braid Co., 152 F.2d 938 (2d Cir. 1945).[19]

■ The Supreme Court has indicated that regulatory acts should be given a practical construction, and one which will enable the agency to perform the duties required of it by Congress. Interstate Commerce Commission v. Goodrich Transit Co., 224 U.S. 194, 213, 32 S.Ct. 436, 56 L.Ed. 729, 737 (1912). And in Niagara Mohawk Power Corp. v. Federal Power Commission, 126 U.S.App.D.C. 376, 379 F.2d 153 (1967) the court in construing the Federal Power Act held the Commission's power to establish effective dates of licenses earlier than the date of issuance, while not expressly set forth in the Act is fairly implied, assuming reasonable exercise of the authority.

> "The Act is not to be given a tight reading wherein every action of the Commission is justified only if referable to express statutory authorization. On the contrary, the Act is one that entrusts a broad subject-matter to administration by the Commission, subject to Congressional oversight, in the light of new and evolving problems and doctrines." 379 F.2d at 158.

■ It is this same policy which here guides this court. Congress has created the FDIC with the power to sue and be sued, and has entrusted the FDIC with the power to regulate the level and advertisement of interest rates on deposits in insured nonmember banks. In discharging this responsibility the FDIC has promulgated a regulation which reasonably seeks to bind those who advertise for insured nonmember banks to the same restrictions placed upon the banks themselves. The FDIC now seeks injunctive relief from the Federal Courts to assist in the enforcement of this regulation.

Sumner's argument that the FDIC has remedies other than an injunction which

19. Federal Maritime Commission v. Atlantic & Gulf/Panama Canal Zone, 241 F. Supp. 766, 775 (S.D.N.Y.1965). Cf., Wyandotte Transportation Co. v. United States, 389 U.S. 191, 19 L.Ed.2d 407 (1967). In addition the courts have been willing to permit administrative agencies to seek injunctive relief in order to preserve jurisdiction and permit consideration of an issue so as to prevent a frustration of the purpose of the administrative act. Board of Governors of Federal Reserve System v. Transamerica Corp., 184 F.2d 311 (9th Cir. 1950).

would resolve the problems which FDIC alleges Sumner has created is best reserved for the deliberations which must follow in the Court below. We do not mean to indicate in any way whether the relief requested by the FDIC is appropriate in this case. At this juncture we are only concerned with the question of the capacity of FDIC to seek injunctive relief and hold that the FDIC is authorized to seek such relief. Whether an injunction should be granted in this case is in the first instance within the sound discretion of the district court which must now hear the evidence and weigh the alternatives.

Reversed and remanded.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.