**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**SUMNER FINANCIAL CORPORATION, Defendant.**

**No. 71-7-Civ-J-S.**

United States District Court,
M. D. Florida,
Jacksonville Division.
May 17, 1974.

Frank X. Friedmann, Jr., Jacksonville, Fla., for plaintiff.

C. Harris Dittmar, Jacksonville, Fla., for defendant.

## ORDER AND INJUNCTION

CHARLES R. SCOTT, District Judge.

This is an action by the Federal Deposit Insurance Corporation (FDIC) for an injunction restraining Sumner Financial Corporation (sometimes hereinafter called SFC and sometimes called Sumner), a so-called money broker, from violating FDIC regulations pertaining to the advertising of interest on deposits in nonmember banks[1] in violation of 12 C.F.R. § 329.8(g) (1973). Hearing was held on SFC's motion for summary judgment.

The regulation, which forms the basis for the action in this case by the FDIC, reads as follows:

> § 329.8(g) *Solicitation on deposits for banks.* Any person or organization which solicits deposits *for* an insured nonmember bank shall be bound by the rules contained in this section with respect to any advertisement, announcement or solicitation relating to such deposits. No such person or organization shall advertise a percentage yield on any deposit it solicits for an insured nonmember bank which is not

---

1. A "nonmember bank" is a bank which is not a member of the Federal Reserve System. An "insured bank" is any bank the deposits of which are insured under the provisions of the Federal Deposit Insurance Corporation Act. 12 U.S.C. § 1813.

authorized to be paid and advertised by such bank. (emphasis added)

The legal issues ·which must be resolved before a summary judgment properly may be granted are: (1) whether, on the basis of the undisputed facts, SFC has solicited deposit obligations *for* nonmember banks, and (2) if so, whether, on the basis of the undisputed facts, SFC advertises that deposit obligations it solicits for nonmember banks will bear more than the legal rate of interest.

The Court of Appeals for the Fifth Circuit, when this case was before it on appeal from an order dismissing the complaint, held that the FDIC has the authority to regulate the activities of a non-bank entity, such as a money broker, which is engaged in the business of soliciting deposits for regulated banks. Federal Deposit Insurance Corp. v. Sumner Financial Corp., 451 F.2d 898 (5th Cir. 1971). The Court of Appeals further held that the Federal Deposit Insurance Act authorizes regulation of advertising of interest rates on deposits in insured nonmember banks whether done by such or for such bank. The sanctions available to FDIC to punish those violating its regulations are not limited to the imposition of a fine but include the right to seek injunctive relief from the district court. 451 F.2d at 903.

FDIC claims that SFC is a money broker which solicits, directly and indirectly, individuals, organizations and business entities to purchase certificates of deposit, letters of credit and other deposit instruments from state banks which are not members of the Federal Reserve System, but which are insured by FDIC (insured nonmember banks). FDIC further alleges that the deposits are represented by Sumner to bear, and do in fact bear, more than the legal rate of interest established by FDIC regulations.[2] FDIC finally claims that Sumner has violated FDIC regulations pertaining to the advertisement of interest on deposits by distributing written documents to investors and by orally soliciting deposits from investors or their agents representing that insured nonmember banks will pay more than the legal rate of interest on deposits.

## I. FACTUAL BACKGROUND

The facts in the case are not disputed. A typical transaction by SFC would proceed as follows: A bank with a customer to whom it is willing to make a loan does not have available cash funds to do so. The bank will tell the customer that, if he can have a substantial deposit put into the bank so that it will increase available cash, the bank will make him a loan of equivalent value. The customer is then in the market for some money and goes to SFC to request that Sumner make a placement of money in that bank, wherever it may be. The deposit requester will inform Sumner for what term the bank wants the deposit. He also will tell Sumner what interest rate the bank will pay on its certificates of deposit. Sumner then will set a fee with the deposit requester, which varies from 2% to 5% of the deposit. For example, Sumner will say, "If the bank is going to pay 5% on one year certificates of deposit, for a fee of 4% from you, we will have our investors place a million dollars in that bank". The initial contact is invariably by the deposit requester to Sumner. The deposit requester is someone who needs money, is unable to acquire it alone, and has been led to SFC as a purveyor of money. The requester calls Sumner and orders the placement of money by completing an application that states: (1) who the customer is, (2) in what bank the customer wants the placement made, (3) the total amount of the deposit requested, and (4) the interest to be paid by the institution at maturity. The application also shows that there is to be an incentive fee paid to Sumner in addition to the interest which will be paid to the investor by the bank.

2. 12 C.F.R. § 329.6 (1971) provides for the maximum rate of interest payable on time and savings deposits by insured nonmember banks.

Sumner then calls an officer of the bank named by the deposit requester and asks the bank if it will accept broker deposits. If the answer is yes, SFC asks what percentage of interest the bank is paying on time certificates for the term. Finally Sumner asks if the bank has any agreement with any deposit requester to hypothecate these deposits, or if these deposits are chargeable in any fashion for any transaction that the bank has with the customer. Sumner does not inquire into the transaction between its customer and the bank.

At this point SFC begins to perform its function of acquiring deposits for the named bank. It contacts investors who consist of people around the country who have done business under the Sumner program before. SFC telephones an investor and tells him that deposits are needed in a particular bank in a particular state, that the bank will issue a six month certificate of deposit and pay a certain percentage return thereon, and that Sumner Financial Corporation will pay the investor an additional certain percentage to purchase a time certificate of deposit from that particular bank. The percentage yield to an individual investor, which is the total of the bank payment plus SFC's payment to him, exceeds the legal rate of interest established in Section 329.6 of the FDIC regulations. 12 C.F.R. § 329.6 (1971).

Willing investors usually buy time certificates of $20,000.00 or less because one of the things Sumner has that makes its program attractive is the assurance to its investors that every bank has FDIC insurance.

## II. SUMMARY FINAL JUDGMENT FOR NONMOVING PARTY

Although plaintiff agrees there is no genuine issue as to what SFC does or as to any of the steps and elements of SFC's method of doing business, nevertheless, plaintiff contends that there is a genuine issue of material fact whether SFC solicits deposits *for* insured nonmember banks within the meaning of 12

C.F.R. § 329.8(g) (1973). The only genuine dispute concerns the legal interpretation to be given the regulation at issue as applied to the undisputed facts. Therefore, the first question for the Court to determine is whether SFC's business procedures, as a matter of law, involve soliciting deposits *for* insured nonmember banks.

Based on the record before the Court, including the affidavit and deposition of John C. Sumner, president of Sumner Financial Corporation, facts are established which, as a matter of law, constitute soliciting deposits for an insured nonmember bank.

The Court has the somewhat unusual situation in this case of rendering a summary judgment in plaintiff's favor, but over plaintiff's objection. Plaintiff suggests that the Court should look beyond the proofs presently before it on the motion for summary judgment and also consider allegations in the sworn complaint which might later be proven. This contention is disposed of by Rule 56(e) of the Federal Rules of Civil Procedure which holds that where a motion for summary judgment is filed, the opposing party may not rest upon the mere allegations or denials of his pleading, but must, by affidavits or as otherwise provided by the rules, set forth facts showing a genuine issue of material fact for trial. Beaufort Concrete Co. v. Atlantic States Constr. Co., 352 F.2d 460 (5th Cir. 1966). Plaintiff cannot be prejudiced by such a rule in this case where the summary judgment is being granted in its favor. Therefore, it is appropriate at this time for the Court, for purposes of the instant motion for summary judgment, to disregard the unverified and unproven allegations of the complaint.

Plaintiff further alleges that the borrowers (deposit requesters) often are not credit worthy, and that on occasion SFC or other money brokers have contributed to bank closings by their activities affecting commercial transactions. This allegation was not established in

the record and, therefore, the Court will not reach the question of whether or not SFC's actions contributed to bank closings.

Defendant argued at the hearing on the motion for summary judgment that no further evidence need be taken, and that the Court should be able to determine from the undisputed evidence before it whether or not SFC solicits deposits for banks, and whether or not SFC's methods of transacting business involve the advertisement of interest rates in excess of the legal maximum.

■ Although the party in whose favor the Court grants this summary judgment is the nonmoving party, which alleges that a genuine issue of material fact remains for trial, the Court is not precluded from finding that, in reality, no factual dispute exists or from granting the summary judgment.[3] Had plaintiff made a motion for summary judgment it is clear it would be entitled to have it granted. Therefore, the Court finds that no genuine issue of material fact remains and that a summary judgment should, *sua sponte*, be rendered in favor of plaintiff on the record as it now stands.

### III. SOLICITING DEPOSITS *FOR* BANKS

Defendant contends that the FDIC regulation found at 12 C.F.R. § 329.8(g) (1973), which forms the subject matter of this case, was never intended to apply to money brokers such as SFC. This argument is based on statements made by Frank Wille, Chairman of FDIC, before the House Committee on Banking and Currency on March 9, 1971. During his testimony Mr. Wille was asked the following question by a member of the committee:

Do I understand your testimony to indicate that there are no present regu-

lations governing brokers negotiating with banks to secure loans in exchange for substantial deposits?

Mr. Wille responded as follows:

There are supervisory admonitions that have been issued to banks.

Our examiners have been instructed to react in a certain way when they find this situation, and it is a subject of critical comment in our reports of examination sent to the bank's board. There are no regulations as such.

At first blush Wille's answer would seem to resolve the primary issue of this litigation because it apparently indicates that the FDIC has no authority to regulate money brokers like Sumner. Nevertheless, on deeper inquiry this is not the case.

In the first place, Wille was not asked to interpret the regulation found at 12 C.F.R. § 329.8(g) (1973) when he replied to the question before the committee but was only responding to a general inquiry with a general answer. Furthermore, the Court of Appeals for the Fifth Circuit in FDIC v. Sumner, 451 F.2d 898 (1971), in contrast to Mr. Wille, clearly stated that regulation of anyone, including money brokers, is contemplated by the regulation if that person or entity solicits deposits for nonmember banks.

■ Finally, although courts give deference to the interpretation of the administrator charged with a statute's or regulation's administration or enforcement, *see*, e. g., Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), that interpretation is not binding on the Court. In the case of Brennan v. General Telephone Company of Florida, 488 F.2d 157 (5th Cir. 1973), the Court of Appeals commented upon the weight a court should place upon the interpretation given a regulation by the

---

3. Local 33, Int'l Hod Carriers v. Mason Tenders Dist. Council, 291 F.2d 496 (2d Cir. 1961) ; United States v. Cless, 150 F.Supp. 687 (M.D.Pa.1957), aff'd 254 F.2d 590 (3d Cir. 1958) ; Hennessey v. Federal Security Adm'r, 88 F.Supp. 664 (D.Conn.1949) ; 6 Moore's Federal Practice § 56.12.

administrator charged with its enforcement.

Courts generally recognize that an administrative interpretation of a statute is entitled to some deference, but the magnitude of the deference accorded varies with the circumstances. It cannot be argued that such an interpretation is controlling; in the absence of a statute giving an administrator power to make legislative rules, his rulings at best offer guidance to the courts whose task it is to interpret statutes. Courts are free to substitute their judgment for such an administrative interpretation, but they will usually accord it at least some weight in their deliberations.

The Court of Appeals for the Fifth Circuit has apparently interpreted the regulation in question more broadly than has Chairman Wille, FDIC v. Sumner, *supra*, and this Court is bound to follow the Court of Appeals' interpretation.

The FDIC regulation at issue binds any person or organization soliciting deposits for an insured nonmember bank to the same advertising rules applicable to such banks. Thus the fact that defendant SFC is not an insured bank does not remove it from the scope of coverage intended by the regulation. When this case was before the Court of Appeals for the Fifth Circuit that court held that, since FDIC alleged that SFC solicited deposits for banks, this Court should make a determination of that question; and the Court of Appeals further clearly held that, if this Court determines that SFC solicits deposits for banks, SFC is bound by the provisions of the subject regulation.

It is clear to the Court that SFC's activities clearly fall within the purview of the regulation found at 12 C.F.R. § 329.8(g) (1973).

On its face, the regulation seeks to prevent direct circumvention of the FDIC's regulatory scheme through the use of non-bank entities to solicit deposits for an insured nonmember, hence, regulated banks.

FDIC v. Sumner, 451 F.2d at 901.

SFC argues that it is not acting *for* a bank or soliciting deposits for a bank because it does not receive direct consideration from the bank. Instead SFC claims it is a money dealer who brokers deposits of funds *for* customers called deposit requesters who are usually borrowers from the banks.[4]

To act for someone is to benefit that person. Therefore, the question is not whether SFC receives a direct benefit from the banks but whether the banks benefit as a result of SFC's actions. That they clearly do. A direct agency relationship is not required between the bank and SFC before the latter can be considered to have solicited deposits for the bank. Consideration is not necessary to establish an "acting for" relationship. Katz v. Amos Treat & Co., 411 F.2d 1046 (2d Cir. 1969); Restatement of the Law 2d, Agency, § 16.

Both SFC and the banks benefit from the close working relationship they maintain. SFC's entire operation depends upon the issuance of certificates of deposit or letters of credit by a bank. In turn, the bank profits in that it increases its assets such as to be able to make additional loans. Furthermore, at least in some instances, the banks them-

---

4. In his deposition John C. Sumner candidly admits that the customers who purchase certificates of deposit from banks around the country at Sumner's request have many times never heard of the bank issuing the certificate until after Sumner approaches them and suggests the deposit.

Numerous letters of correspondence were mailed between SFC and the respective banks in almost every transaction, thus indicating how closely they worked together in each placement. Furthermore, in some instances when a certificate of deposit matured and was ready for redemption or renewal the bank notified SFC of that situation rather than dealing with the individual purchaser of the certificate.

selves regard SFC's activities to be conducted "for" the bank.[5]

One example of the close working relationship maintained between Sumner and the banks is found when the Court considers the mechanics of the transactions wherein certificates are purchased. In most instances when SFC's customer is ready to purchase a certificate of deposit from a selected bank the check in payment of the certificate is transmitted to the bank accompanied by a "Letter of Transmittal for the Purchase of 'Time Certificate of Deposit' ". This Letter of Transmittal is prepared by SFC and contains the following statement: "(8) This deposit is being forwarded to you at the request of: 'Sumner Financial Corporation', # 5821 San Juan Avenue, Suite # 116, Jacksonville, Florida # 32210. Phone: Area Code # 904–388–7596". This direct participation by SFC in the purchase of the certificates of deposit not only indicates the close relationship between Sumner and the banks but also is further evidence SFC solicits deposits *for* banks.

For the foregoing reasons the Court is satisfied that SFC solicits deposits for nonmember banks. In determining that such solicitation occurs the Court has carefully scrutinized many written communications and much correspondence between SFC, its deposit requesters, its customers and the various banks.

## IV. ADVERTISING ILLEGAL INTEREST RATES

Having resolved the initial question by finding that defendant solicits deposit obligations for nonmember banks, the Court must next determine whether or not in so doing SFC advertises a rate of interest on any deposit it solicits which is higher than the legal maximum that bank would be authorized to advertise. If SFC has done so, it has acted in violation of 12 C.F.R. § 329.8(g) (1973), and injunctive relief is appropriate.

The record reveals that on repeated occasions and by numerous methods SFC directly and indirectly represented to investors that if they would purchase certificates of deposit from designated banks they would receive an interest rate in excess of the legal maximum. In most cases part of the interest was paid by the bank (at a rate below or equal to the legal maximum), and the remaining part was paid by SFC as an "incentive fee". When the incentive fee is added to the rate paid by the bank, an amount in excess of the legal maximum is realized.

In examining the file and SFC's records, the Court has discovered statements, entries and forms which indicate that defendant has advertised percentage yields on deposits it solicited for insured nonmember banks in excess of the legal maximum. One such indication is found at the top of an SFC application form entitled "Time Deposit". This form is included in each of SFC's files and contains a statement reading, "Total Rate Quoted: ———%". After each of these statements in the forms in each file examined by the Court, is an entry of an interest rate in excess of the legal maximum. Further down the page on

---

5. The following letter dated April 21, 1970, was sent on the letterhead of Peoples Bank & Trust Company, Aurora, Colorado, to one purchaser of certificates of deposit from the bank:

Mr. Robert E. Osborn, Ass't Treasurer General Conference of Seventh-Day Adventists
6840 Eastern Avenue, N. W.
Washington, D. C. 20012

Dear Mr. Osborn:
We are in receipt of and thank you for your check for $20,000.00 to purchase a six-month time certificate.

Enclosed is our certificate number NO176, payable to your order with interest at 5%, payable at maturity.

We thank you for this business and appreciate Mr. Sumner's effort in requesting this business for our bank.

Very truly yours,
(original signed)
H. J. Bleakley
President

the same form this interest rate is broken down into two parts entitled, "Interest Paid by Institution at Maturity: ————", and "Incentive Fee to Sumner Financial Corporation: ————".

A second indication that SFC has advertised rates of interest in excess of the legal maximum is found on a form entitled, "Investor Placement for Time Deposit", which is included in many of SFC's files. That form contains a statement reading, "Total Rate Quoted: ————% P.A.". The amount of interest written in that blank on each of these forms is an amount in excess of the legal maximum.

A third such indication is found in a transaction between SFC and Charlesbank and Trust Company of Cambridge, Massachusetts. In that situation SFC itself acted as a bank in that it paid the entire interest or percentage yield to the purchaser of the certificate of deposit issued by the bank, and the bank paid nothing for the deposit placed with it. The amount filled in on the SFC application form after the statement "Total Rate Quoted: ————%" is nine percent. On the same form the entry after the statement "Interest Paid by Institution at Maturity:" is zero percent, and the entry after the statement "Incentive Fee to Sumner Financial Corporation:" is nine percent.

SFC, of course, did not pay the nine percent interest rate out of its own funds, but was reimbursed therefor by the deposit requester. The advantages to SFC of a transaction of this sort are: (1) the purchaser of the deposit obligation, in return for an unlawful annual percentage yield, releases funds to an FDIC insured bank which would not have been released to SFC, and (2) in the event the borrower (deposit requester) is unable to repay the loan, the bank, FDIC and the general public suffer the loss rather than Sumner. The obvious disadvantage of such a transaction is that the FDIC regulations controlling the advertisement of interest rates are circumvented to the detriment of the integrity of the banking industry and the general public.

In support of its defense that it never advertised a percentage rate in excess of the legal maximum, SFC relies heavily upon the content of a pamphlet it sent to each customer who desired to purchase a certificate of deposit through Sumner's program. A substantially similar document was also sent to each deposit requester. On the third page of the pamphlet, in bold type, is the following statement: "The incentive fees are never paid either directly or indirectly by any recipient or depository institution". This statement, SFC contends, adequately alerts anyone dealing with SFC that the bank which issues the certificate of deposit only pays the legal rate of interest, and SFC pays an incentive fee in addition thereto. Thus, SFC reasons, this disclaimer statement should make it clear that SFC does not advertise a rate of interest in excess of the legal maximum.

The Court has carefully examined this disclaimer statement in conjunction with the other statements and entries on SFC forms, has fully considered the deposition of John C. Sumner, president of SFC, and has studied the transaction wherein SFC paid the entire rate of interest. As a result of these examinations the Court finds that, as a matter of law, the course of conduct engaged in by SFC constitutes advertising a percentage yield on deposits it solicits for insured nonmember banks which is not authorized to be paid and advertised by such banks.

The disclaimer statement alone is not sufficiently clear as to be in compliance with the requirements found at 12 C.F. R. § 329.8(g) (1973). Furthermore, the substance of the transactions and SFC's course of conduct, rather than the technical language of the statement, must be considered in determining whether SFC advertised a rate of interest in excess of the legal maximum. The Court is fully satisfied that in soliciting deposits for insured nonmember banks SFC did so advertise.

The Court's reasoning fully comports with the intent and purpose of the regu-

lation in question as evidenced in the "statement of purpose" which accompanied the final publication of the regulation.

[T]he regulations are made expressly applicable to persons or organizations who solicit deposits for insured nonmember banks in advertisements relating to such deposits. This requirement would prevent brokers from advertising a percentage yield on deposits solicited for insured nonmember banks which is in excess of the percentage yield which such banks themselves are permitted to advertise.

34 Fed.Reg. 9704 (1969).

When a nonbank entity acting as a money broker solicits deposits for a bank which is insured by the Federal Deposit Insurance Corporation, but which is not a member of the Federal Reserve System, and in such solicitation advertises a gross percentage interest rate in excess of the yield that bank would be authorized to advertise or pay, the broker has acted in violation of the regulation found at 12 C.F.R. § 329.8(g) (1973), and the FDIC is entitled to come into district court for an injunction restraining such action by the broker.

Therefore, it is

Ordered and Adjudged:

That Sumner Financial Corporation, its officers, agents, successors, assignees, principals, assignors, and persons acting in concert with it, are hereby permanently enjoined and restrained from violating the provisions of 12 C.F.R. § 329.8(g) (1973); and, it is further

Ordered and Adjudged:

That this memorandum opinion constitutes the Court's findings of fact and conclusions of law; and, it is further

Ordered and Adjudged:

That defendant's motion for summary judgment, filed herein December 6, 1973, is hereby denied; and, it is further

Ordered and Adjudged:

That the Court, *sua sponte*, grants a summary final judgment in favor of plaintiff and against defendant.