The Honorable Cliff Hoofman State Senator P.O. Box 1038 North Little Rock, Arkansas 72115
Dear Senator Hoofman:
This is in response to your request for an opinion on several questions concerning Act 899 of 1989, which is entitled "An Act to Provide for the Removal of Unattended and Abandoned Vehicles; and for Other Purposes". Your questions are restated and answered below in the order posed.
Your first question is as follows:
What conflict, if any, exists between Acts 680 and 899 of 1989? Specifically, are there discrepancies in the procedures for the public or private sale of abandoned vehicles?
The answer to your first question is "yes". The requirements which must be met prior to the sale of an abandoned vehicle are different under each act. It should be noted initially that the acts differ fundamentally on two issues which are unrelated to the sale, but which go to the general nature of the acts. Act 899 provides a procedure for the removal of abandoned vehicles left on PUBLIC property, and contemplates "tagging" of the vehicles by law enforcement officials, who will then cause the vehicles to be placed in the custody of a towing-storage firm. Act 680, however, applies to abandoned vehicles left on PUBLIC or PRIVATE property and contemplates that private individuals will have the vehicles placed in the custody of a towing-storage firm. Both acts provide that a towing-storage firm obtaining possession of an abandoned vehicle shall give notice to the owner or owners of the vehicle[1]. The time limit and manner for giving the notice is, however, different under each act.
Act 899 provides that notice of possession must be mailed within FIVE working days of the date the vehicle is logged in at the towing-storage firm. Act 899 also provides that this notice must be sent by certified mail, return receipt requested. Additionally, a subsequent and separate notice of sale must be sent to the owner or owners 15 days before the date of any sale of the vehicle, and this same notice of sale must automatically be published in a newspaper.
Act 680 of 1989 provides that notice of possession must be sent by the towing-storage firm to the owner of the vehicle not later than TEN days after taking the vehicle into custody. The notice is to be sent by certified mail. Act 680 of 1989, unlike Act 899 of 1989, does not require a separate notice of sale, and requires publication of the notice of possession only if the identity and address of the last registered owner cannot be determined. Act 680, however, requires that an affidavit be executed by the holder of the vehicle stating that the affiant has complied with the notice provisions of the act. Additionally, under Act 680, the towing-storage firm is required to call the National Automobile Theft Bureau prior to a sale of the vehicle.
Another difference between the two acts involves the disposition of excess sale proceeds over the amount necessary to cover the towing and storage charges. Under Act 899, the excess proceeds are to be paid to the county clerk to the account of the person legally entitled thereto. Under Act 680, if after ninety days from the sale date, the owner has not been located, and if no claim has been made on the vehicle, the excess sale proceeds go to the State Highway and Transportation Department Fund.
Additionally, Act 680 of 1989 appears in Section 2 to authorize a private sale of a vehicle abandoned on private property. That section makes no reference to a public sale, although the same notice and other procedural requirements set out in Section 1 are applicable. Section 1 of Act 680 of 1989, and Act 899 of 1989 authorize only public sales.
Your second question is as follows:
 In Section 5 of Act 899 of 1989, the law enforcement agency who requests the towing and storage service must provide that firm with the name and address of the last registered owner, any lienholder and the serial number of the vehicle. Does this language permit law enforcement authorities to disseminate information from the Arkansas Crime Information Center and/or National Law Enforcement Teletype System?
Section 5 of Act 899 of 1989 does not indicate how the law enforcement agency is to obtain the required information. I have, however, enclosed a copy of Opinion No. 87-356, wherein it is noted that this information is generally available from Motor Vehicle Division of the Revenue Department. We must conclude that to the extent dissemination of information from the sources you mentioned is otherwise prohibited, the act does not stand as contrary authority.
Your third question involves the operation of the Arkansas Towing and Recovery Board, created in Act 899 of 1989, and is as follows:
 Will the newly-formed Arkansas Towing And Recovery Board have an administrative or enforcement arm? If so, after the promulgation of rules and regulations, may it spend money to comply with the Administrative Procedures Act and may it collect fees for funding of operations and enforcement? May it use privately raised funds to underwrite the advertising efforts to comply with the Administrative Procedures Act?
Clearly, the Board will have an administrative arm. The board itself will be an administrative body charged with the duty to make rules and regulations to carry out the act. The enforcement powers of the board are less clear. The act in Section 9 (c) provides:
 (c) The Board shall promulgate such rules and regulations to carry out the intent of this Act and shall regulate the towing industry including requirements for licensing. Such authority shall not extend to the setting of tariffs for the towing industry.
Under this language, the Board has the authority to license towing firms and to "regulate the towing industry". The board's enforcement powers, in my opinion, include its authority to approve licenses for towing firms, and to regulate the industry. This authority will presumably include authority to conduct hearings on compliance with the rules promulgated by the Board, and the authority to impose sanctions, including suspension of licenses, for non-compliance.
In response to the second part of your third question, it appears that the Board will have to spend money to comply with the Administrative Procedures Act, (A.C.A. 25-15-201 et seq.), because it is subject to that act. A.C.A. 25-15-202 (1). Prior to the adoption to rules and regulations, the board must comply with the notice provisions of the Administrative Procedures Act. A.C.A. 25-15-204. Your question thus becomes whether the Board can charge fees and use privately raised funds to cover the expense of this notice and the Board's operations in general. Although the authority to charge fees is not set out in the statute, it may reasonably be concluded that the legislature intended that the Board be funded by the collection of license fees. It has been held that in defining the powers of an administrative body, it is important to consider the purpose of the legislation, and to give the legislation a practical construction which will enable the body to perform the duties required of it by the legislature. SEE GENERALLY, FEDERAL DEPOSIT INSURANCE CORPORATION v. SUMNER FINANCIAL CORP., C.A., 451 F.2d 898 (5th Cir. 1971), and 73 C.J.S. PUBLIC ADMINISTRATIVE LAW AND PROCEDURE 50. The legislature has required the new Board to comply with the Administrative Procedures Act, (25-15-202 (1)), and that requirement necessarily mandates funding.
It is thus reasonable, in my opinion, to conclude that the new Board has authority to collect fees on the issuance of licenses. Additionally, we can find no general prohibition against the collection and expenditure of privately raised monies in this regard.
Your final question is as follows:
 Under Section 4 of Act 899 of 1989, is a vehicle which is more than three (3) feet from the public road/way excluded from enforcement under this statute? Which term "public road" or "public way" is the appropriate one for this legislation?
Section 4 of Act 1989 provides:
 TAGGING. Any law enforcement officer observing a vehicle on or near a public way which appears to be unattended shall tag the same by affixing securely a colored form, or by using an easily observable sticker. Said tag shall show (1) the date and time of tagging; (2) THAT SAID VEHICLE WILL BE REMOVED PURSUANT TO THIS STATUTE UNLESS THE VEHICLE IS REMOVED WITHIN TWENTY-FOUR HOURS IF WITHIN THREE FEET OF A PUBLIC WAY; (3) the location and telephone number where more information may be obtained; and (4) the identification of the officer. [Emphasis added.]
It is my opinion that the answer to the first part of your fourth question is "no". Section 4 itself authorizes officers to tag vehicles "on or near a public way". It does not specify that the vehicle must be within three feet of a public way. The same conclusion can be reached under the act's definition of "unattended". That term is defined in the act as including vehicles left "seventy-two (72) hours in a location of three (3) or more feet of a public way". It is thus my opinion that such vehicles are not excluded from the operation of Section 4 of the act. That section, however, provides that the officer shall include the time limit within which the vehicle will be removed only on vehicles left within three feet of a public way.
In response to the second part of your fourth question, it is my opinion that neither term "public road" nor "public way" is more appropriate than the other. The term "public way" is used in the act, and a definition is provided. There is thus no question as to whether one term is more "appropriate" than the other. The legislature can opt to use either term and define it so as to suit its specific purposes.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
[1] Both acts also require notification of lienholders.