**Bill CLARK, Herbert Futch, Austin Hurst, Louis Sliker and William Barrineau, Plaintiffs–Appellants,**

v.

**COATS & CLARK, INC., Defendant–Appellee.**

No. 88–8339.

United States Court of Appeals, Eleventh Circuit.

Feb. 16, 1989.

**1238**

Jeanne M.L. Player, Spriggs & Associates, Tallahassee, Fla., for plaintiffs-appellants.

Vella M. Fink, Asst. Gen. Counsel, Peggy R. Mastroianni, Atty., Washington, D.C., for amicus-curiae—E.E.O.C.

William K. Principe, Constangy, Brooks & Smith, Edward Katze, Atlanta, Ga., for defendant-appellee.

Before HILL and JOHNSON, Circuit Judges, and NICHOLS *, Senior Circuit Judge.

NICHOLS, Senior Circuit Judge:

Appellants Bill Clark, Herbert Futch, Austin Hurst, Louis Sliker, and William Barrineau appeal from the judgment of the United States District Court for the Middle District of Georgia (Elliot, J.), granting in part appellee Coats & Clark, Inc.'s motion to dismiss. The Equal Employment Opportunity Commission (EEOC or Commission) has appeared and made a helpful argument as amicus. We affirm in part, reverse in part, and remand.

## I. *Background*

All of the appellants in this lawsuit are former employees of appellee Coats & Clark, Inc. (Coats & Clark), and all appellants were members of an employee pension plan covered by Section 510 of the Employee Retirement Income Security Act (ERISA). 29 U.S.C. § 1140. Appellants Futch and Hurst were terminated on December 30, 1983, after 21 and 26 years of service, respectively. Appellants Sliker and Barrineau, employees of 9 and 25 years, respectively, were terminated in March of 1985, and appellant Bill Clark was terminated on October 31, 1985, at age 58 after 38 years of employment. Each appellant alleges that his termination was effected for the purpose of interfering with his attainment of pension and retirement benefits, in violation of section 510 of ERISA.

Appellant Clark alleges also that his termination was carried out in a cruel and harsh manner intended to inflict severe emotional distress upon him, and further that his termination was made in violation of section 7(b) of the Age Discrimination in

---

* Honorable Philip Nichols, Jr., Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

Employment Act (ADEA). 29 U.S.C. § 626(b).

After separation from Coats & Clark, appellant Bill Clark inquired of the Atlanta office of the EEOC the appropriate procedures for filing a charge against his former employer based upon a violation of ADEA. The Commission sent Clark an intake questionnaire to be completed and returned to the Commission.

The completed questionnaire provided the name and address of both Clark and his employer and a description of the facts giving rise to the alleged age discrimination. The questionnaire was signed by Clark and dated March 26, 1986; the Commission received the completed questionnaire on April 1, 1986. On April 21, 1986, the Commission mailed a Notice of Charge of Discrimination to Coats & Clark stating that Clark had filed a charge against the company under ADEA alleging age discrimination in connection with his involuntary retirement. On May 21, 1986, Clark signed a formal Charge of Discrimination prepared by the EEOC, and the signed charge was received by the EEOC on May 28, 1986. The EEOC thought it acted timely to preserve Clark's rights and is much embarrassed by the contrary holding.

Clark filed a complaint against Coats & Clark on September 9, 1987, in the District Court for the Middle District of Georgia. The complaint set forth the ADEA claim as well as a claim for violation of section 510 of ERISA, and a claim for intentional infliction of emotional distress. Futch, Hurst, Sliker, and Barrineau joined the action, each alleging violations of section 510 of ERISA and other claims not relevant to this appeal.

In lieu of answering the complaint, Coats & Clark filed a motion to dismiss all of the claims in the case except for Clark's ERISA claim. In ruling upon the motion to dismiss, the trial court considered matters outside the complaint and thus converted the motion to dismiss into one for summary judgment. Fed.R.Civ.P. 12(c); *Charles J. Arndt, Inc. v. City of Birmingham,* 748 F.2d 1486 (11th Cir.1984). The motion was granted by way of an order dated April 14, 1988, dismissing all of the claims. The ERISA claims of all appellants except Clark were held to be barred by a two-year statute of limitations. O.C.G.A. § 47–2–3; O.C.G.A. § 45–19–36; O.C.G.A. § 9–3–22; O.C.G.A. § 9–3–33. Clark's ADEA claim was dismissed as barred for failure to file a timely charge with the EEOC as required by 29 U.S.C. § 626(d)(1), and Clark's tort claim for intentional infliction of emotional distress was held to be preempted by section 514(a) of ERISA. 29 U.S.C. § 1144(a). The trial court's unfavorable disposition of ADEA and tort claims other than those of Clark are not appealed.

## II. *Issues*

The issues before us on appeal are:

(1) Whether Clark's submission of an intake questionnaire to the EEOC constitutes the timely filing of a charge.

(2) Whether appellants' ERISA claims are barred by the statute of limitations.

(3) Whether ERISA preempts Clark's claim for intentional infliction of emotional distress.

There being no disputed issues of material fact, all of the issues present questions of law over which this court has plenary review. *Simon v. Kroger Co.,* 743 F.2d 1544, 1546 (11th Cir.1984), *cert. denied,* 471 U.S. 1075, 105 S.Ct. 2155, 85 L.Ed.2d 511 (1985).

## III. *Discussion*

(1) *Whether Clark's submission of an intake questionnaire to the EEOC constitutes the timely filing of a charge.*

As a precursor to a civil action for age discrimination, the ADEA requires that an individual file a charge alleging unlawful discrimination with the EEOC within 180 days after the alleged unlawful practice occurred. 29 U.S.C. § 626(d)(1). According to the facts described above, the informal intake questionnaire which Clark completed was received by the Commission 152 days after Clark's termination, and the Commission's Notice of Charge of Discrimination was mailed to Coats & Clark 172 days after Clark's termination. The par-

ties agree that these events transpired within 180 days of Clark's termination.

The formal charge prepared by the EEOC was signed by Clark 202 days after the termination, and was received by the Commission 209 days after the termination. Coats & Clark argues that the formal charge signed by Clark 202 days after his termination was the operative document which the statute required to be filed within 180 days of the alleged discrimination. Because the formal charge was not filed within 180 days, Coats & Clark reasons that the ADEA claim is barred. Clark, joined by the EEOC as amicus, suggests that any written statement describing the alleged discrimination and identifying the defendant is adequate to satisfy the filing requirement of section 626(d)(1). These requirements were met by the informal intake questionnaire and, therefore, Clark argues, his actions were in full compliance with the statute.

The EEOC's interpretation of statutes which it is charged with enforcing is entitled to great deference. *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 761, 99 S.Ct. 2066, 2074, 60 L.Ed.2d 609 (1979); *Griggs v. Duke Power Corp.,* 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971); *Federal Deposit Insurance Corp. v. Sumner Financial Corp.,* 451 F.2d 898, 902 (5th Cir.1971). The construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong. *Braddy v. Southern Bell Telephone & Telegraph Corp.,* 458 F.2d 666, 669 (5th Cir.1972); *FDIC v. Sumner, supra.*

▪ The EEOC's interpretation of the statute at issue here is set out in the regulations it has promulgated for enforcement of the ADEA. The pertinent regulations read:

[29 C.F.R.] § 1626.6 **Form of charge.**

A charge shall be in writing and shall name the prospective respondent and shall generally allege the discriminatory act(s). Charges received in person or by telephone shall be reduced to writing. [29 C.F.R.] § 1626.8 **Contents of charge; amendment of charge.**

(a) In addition to the requirements of § 1626.6, each charge should contain the following:

(1) The full name, address and telephone number of the person making the charge;

(2) The full name and address of the person against whom the charge is made;

(3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices;

(4) If known, the approximate number of employees of the prospective defendant employer or members of the prospective defendant labor organization.

(5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

(b) Notwithstanding the provisions of paragraph (a) of this section, a charge is sufficient when the Commission receives from the person making the charge either a written statement or information reduced to writing by the Commission that conforms to the requirements of § 1626.6.

The EEOC argues that while section 1626.8(a) identifies information beyond that set out in section 1626.8(b), the additional information is not required to be included in a document in order for that document to constitute a charge within the meaning of 29 U.S.C. § 626(d)(1); section 1626.8(a) merely states that the additional information "should" be stated in the charge. *See Steffen v. Meridian Life Insurance Co.,* 859 F.2d 534 (7th Cir.1988) (completed EEOC intake questionnaire meets the requirements of 29 C.F.R. § 1626.8(b) and 29 U.S.C. § 626(d)(1)); *Foster v. National Bank,* 857 F.2d 1058 (5th Cir.1988) (document meeting the requirements of 29 C.F.R. § 1626.8(b) satisfies 29 U.S.C. § 626(d)(1)).

We agree with the EEOC's interpretation of these regulations. The plain language

of section 1626.8(b) unmistakably establishes that a charge is sufficient without the additional information. Furthermore, we find that the interpretation of section 626(d)(1) advanced by these regulations is in harmony with the congressional objectives in enacting the statute. The basic purpose of the filing requirement of section 626(d)(1) "is to provide the [then] Department [of Labor, now the EEOC] with sufficient information so that it may notify prospective defendants and to provide the \* \* \* [EEOC] with an opportunity to eliminate the alleged unlawful practices through informal methods of conciliation.". H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess., *reprinted in* [1978] U.S.Code Cong. & Admin.News 504, 528, 534. Specifically, Congress intended "that the 'charge' requirement will be satisfied by the filing of a written statement which identifies the potential defendant and generally describes the action believed to be discriminatory." *Id.*

In the case *sub judice,* the informal intake questionnaire fulfilled all of the objectives desired by Congress in enacting section 626(d)(1). The questionnaire was in writing and described the action which Clark believed to be discriminatory. The Commission was able to and did promptly notify Coats & Clark of the complainant's allegations. Indeed, the notification was sent to Coats & Clark within 180 days of the alleged discrimination.

Based upon the above analysis, we cannot say that there are compelling indications that the EEOC's construction of the statute is wrong. Accordingly, we defer to the interpretation advanced by the EEOC in its regulations and before us.

(2) *Whether the Georgia State statute of limitations for enforcement of statutory rights and recovery of wages bars appellants' ERISA claims.*

■ Appellants Hutch, Furst, Sliker, and Barrineau seek back pay, front pay, and reinstatement in connection with their claims under section 510 of ERISA. The trial court has denied the requested relief, holding that the claims are barred by a two-year statute of limitations, citing O.C. G.A. § 47–2–3; O.C.G.A. § 45–19–36; O.C. G.A. § 9–3–22; or O.C.G.A. § 9–3–33.

ERISA does not contain a statute of limitations for section 510 actions. When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a state time limitation as federal law if it is not inconsistent with federal law or policy to do so. *E.g., Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985). When adopting a state statute of limitations, we first determine the essential nature of the claim under federal law and then focus on the period applicable to such a claim under the most analogous state law claim. *E.g., McGhee v. Ogburn,* 707 F.2d 1312, 1315 (11th Cir.1983); *Braden v. Texas A & M University System,* 636 F.2d 90, 92 (5th Cir.Unit A 1981); *Franklin v. City of Marks,* 439 F.2d 665, 669 (5th Cir.1971).

Having indicated that a two-year limitations period applies, the trial court cited four statutes, only two of which have two-year limitations periods. O.C.G.A. § 45–19–36 contains a 180–day limitations period for the filing of employment discrimination claims by employees of the state. This statute applies to employment discrimination, and appellants' claims do not allege any discriminatory action by Coats & Clark. O.C.G.A. § 47–2–3 contains a 30–day limitations period for seeking judicial review of a denial of state employees' retirement benefits. Both O.C.G.A. §§ 45–19–36 and 47–2–3 by their own terms govern claims pertaining only to state employees, and the claims here at issue are against a private employer. For these reasons, the claims covered by these two statutes are not sufficiently analogous to appellants' claims to justify adoption of these limitations periods.

In order to characterize the nature of the claims at issue, the statute giving rise to the rights asserted must be examined. In *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), the Court was confronted with the task of characterizing a claim of racial employment discrimination for purposes of selecting an

analogous state law limitations period. The claim was founded upon 42 U.S.C. § 1981 which provides that all persons shall have the right to make and enforce contracts free from racial discrimination. The employer seized upon the language concerning "contracts" and urged the Court to apply the state statute of limitations for interference with contractual rights. The employee urged application of a state statute of limitations governing personal injury claims. The limitations period selected by the *Goodman* Court was that for personal injury actions, not for interference with contracts.

Coats & Clark argues that *Goodman* compels us to apply the personal injury limitations period to the present case, because the action concerns an adverse employment decision. We disagree. The *Goodman* Court explained that the issue before it concerned a statute having a focus much broader than on contractual rights alone. The section included the personal rights to sue, to testify, and to equal rights under all laws for the security of persons and property. In view of the broad scope of the section, the Court held that section 1981 "is thus part of a federal law barring racial discrimination, which * * * is a fundamental injury to the individual rights of a person." *Id.* 107 S.Ct. at 2621.

The focus of the ERISA statute at issue in this case does not encompass individual or personal rights. The primary purpose of ERISA is to provide adequate retirement income to persons who have spent their careers in a productive work capacity. H.R.Rep. No. 93–807, 93rd Cong., 2d Sess., pt. II, *reprinted in* [1974] U.S.Code Cong. & Admin.News 4639, 4676. These rights cannot be regarded as anything other than economic, and to characterize their violation as "personal injuries" would be a distortion of language. Hence we reject the application of O.C.G.A. § 9–3–33 governing personal injury claims. The claims are founded on contract.

The appellants suggest that O.C.G.A. § 9–3–24 governing actions upon "simple contracts in writing" is the most closely analogous state limitations period. Appellants' claims, predicated upon a statutory right, seek recovery of wages and reinstatement of pension rights. O.C.G.A. § 9–3–22 which was applied by the trial court addresses actions to enforce statutory rights and speaks specifically to the recovery of wages. The focus of this statute much more narrowly and specifically contemplates the action now before us than does the general language of O.C.G.A. § 9–3–24 governing contract actions. Therefore, the two-year limitations period of O.C.G.A. § 9–3–22 is the most analogous state statute of limitations and governs appellants' claims. This statute provides a two-year limitations period for recovery of wages, and a 20–year limitations period for equitable enforcement of statutory rights such as appellants seek in their reinstatement claims. Accordingly, only the claims for wages are barred.

**(3)** *Whether ERISA preempts Clark's claim for intentional infliction of emotional distress.*

We turn now to the issue of whether ERISA preempts Clark's tort claim for intentional infliction of emotional distress. Section 514(a) of ERISA provides that ERISA "supersedes any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." This preemption provision is given a broad construction. *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981).

In *Shaw,* the Court explained that "a law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* 463 U.S. at 96–97, 103 S.Ct. at 2900. The broad reach of ERISA's preemption provision applies to all state laws insofar as they apply to employee benefit plans even if those laws do not expressly concern employee benefit plans and amount

only to indirect regulation of such plans. *Id.* at 98, 103 S.Ct. at 2900.

In ascertaining the reach of ERISA's preemption statute, this court has held that state common law claims arising out of the administration of benefits under a pension plan are within the limits of ERISA's reach. Thus, a claim that a pension plan administrator's refusal to pay benefits was so outrageous as to amount to intentional infliction of emotional distress is preempted by ERISA. *Howard v. Parisian, Inc.,* 807 F.2d 1560 (11th Cir.1987). *See also Powell v. Chesapeake & Potomac Telephone Co. of Virginia,* 780 F.2d 419 (4th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986) (ERISA preempts state common law claim for intentional infliction of emotional distress, insofar as it is invoked by a beneficiary seeking relief for injuries arising out of pension plan administration).

In addition to state law claims arising out of administration of benefits, claims which directly impact on the administration of the pension plan are within the limits of ERISA's reach. *Jackson v. Martin Marietta Corp.,* 805 F.2d 1498 (11th Cir.1986) (state law breach of contract claim alleging improper calculation of employee's pension service date is preempted). State law claims arising from improper processing of a claim for benefits are preempted by ERISA. *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Also, state law claims depending from the fiduciary duties covered by ERISA are preempted. *Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1470 (11th Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987).

While the ERISA preemption provision must be given a broad construction, surely there are limits. In *Phillips, supra,* the court was mindful of the fact that ERISA preempts state law claims *only as they relate to employee benefit plans. Id.* at 1470, n. 2. Indeed, "some state laws affect employee benefit plans too tenuously to be characterized fairly as relating to employee benefit plans." *Howard v. Parisian,* 807 F.2d at 1564. For example, where a state claim arises out of a common nucleus of operative fact to an ERISA claim, a federal court has pendent jurisdiction to hear the state claim. But the mere existence of pendent jurisdiction does not automatically qualify the state claim as "related" to the ERISA claim by virtue of the common factual setting. In *Miner v. International Typographical Union Negotiated Pension Plan,* 601 F.Supp. 1390, 1394 (D.Colo.1985), the court held that ERISA preempts all pendent party claims. This court commented that "[w]e simply cannot read ERISA that broadly. ERISA's preemption * * * [provision] surely does not extend to every state law claim that, however remotely, factually involves an employee benefit plan." *Giardiello v. Balboa Insurance Co.,* 837 F.2d 1566, 1571 n. 8 (11th Cir.1988).

Clark asserts that his employment termination was carried out in a manner which was intended to inflict severe emotional distress upon him. In the *Howard v. Parisian, supra,* decision, the plaintiff alleged that the refusal to pay benefits under an ERISA covered plan was carried out in a manner which was intended to inflict severe emotional distress upon him. This may be hard to prove to the extent required by Georgia law, but we are passing only on the preemption aspect at this time. The claim in *Howard* was preempted because the conduct at issue was effected in connection with the administration of benefits in an employee benefit plan. Clark has not alleged any conduct on the part of Coats & Clark which relates to the processing of any ERISA covered benefit or claim. The tort claim embraces no conduct on the part of Coats & Clark which tends to impair or in any way affect an employee's ERISA rights.

The complaint's description of the tort claim is general and skeletal, but as far as we can tell, it alludes to conduct which was proximate (or even concurrent) in *time* to the alleged ERISA violation, but wholly remote in *content.* The complaint vaguely sets out the allegation that all five defendants were summarily dismissed and given the "bum's rush". In its present form, the complaint makes no statement which ties

together the tort claim and the ERISA claim in such a way that one "relates to" the other in the statutory sense. For this reason, we hold that the tort claim is not preempted. Because the tort claims of other plaintiffs were stated jointly in one count with Clark's, any grievance along that line peculiar to Clark was not expressly alleged. For a satisfactory final disposition of this part of the case, there is need for a pleading specific to Clark. It hardly can have been intended to allege that the treatment of five plaintiffs, at different times, was identical.

Consistent with the requirements of notice pleading, *see, e.g., Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), the district court may, in its discretion, after remand, order that the complaint be amended to specify facts peculiar to Clark upon which Clark predicates his conclusion that he was given the "bum's rush". Clark has filed his brief on appeal with shocking details of the conduct underlying his tort claim, but these assertions are not properly of record and we, like the trial court, may rule only on the complaint which is properly of record. The complaint now before us also does not establish any nexus between the allegedly tortious conduct and an ERISA covered plan. Of course, if after remand the amended complaint reveals that the conduct complained of does relate to the administration of an ERISA covered plan, the defendants can again raise the preemption issue on the amended complaint, as our decision relates to the complaint before us.

Coats & Clark points out that the tort claim incorporates by reference all facts involved in the ERISA claim, thus rendering the claims related. That the claims are related, or even concurrent, in time does not render them related in a substantive legal sense. A similar preemption issue was raised in the case of *Farmer v. United Brotherhood of Carpenters & Joiners of America, Local 25,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), where the defendant union asserted that the plaintiff's claim for intentional infliction of emotional distress was preempted by the National Labor Relations Act. The Court reasoned:

The occurrence of the abusive conduct, with which the state tort action is concerned, in such a context of federally prohibited discrimination suggests a potential for interference with the federal scheme of regulation.

Viewed, however, in light of the discrete concerns of the federal scheme and the state tort law, that potential for interference is insufficient to counterbalance the legitimate and substantial interest of the State in protecting its citizens. If the charges in Hill's complaint were filed with the Board, the focus of any unfair labor practice proceeding would be on whether the statements or conduct on the part of Union officials discriminated or threatened discrimination against him in employment referrals for reasons other than failure to pay Union dues. Whether the statements or conduct of the respondents also caused Hill severe emotional distress and physical injury would play no role in the Board's disposition of the case, and the Board could not award Hill damages for pain, suffering, or medical expenses. Conversely, the state-court tort action can be adjudicated without resolution of the "merits" of the underlying labor dispute. Recovery for the tort of emotional distress under California law requires proof that the defendant intentionally engaged in outrageous conduct causing the plaintiff to sustain mental distress. The state court need not consider, much less resolve, whether a union discriminated or threatened to discriminate against an employee in terms of employment opportunities. To the contrary, the tort action can be resolved without reference to any accommodation of the special interests of unions and members in the hiring hall context.

On balance, we cannot conclude that Congress intended to oust state-court jurisdiction over actions for tortious activity such as that alleged in this case.

*Farmer v. Carpenters,* 430 U.S. at 304–05, 97 S.Ct. at 1065–66 (citations omitted).

While the statutory scheme at issue here is not the same as the one discussed in *Farmer, supra,* the *Farmer* Court's reasoning is persuasive to the case now before us. In the present case, as in *Farmer,* statements and conduct which are concurrent or closely related, in time only, may be the focus of a both an action addressing a federally regulated concern as well as a state action for intentional infliction of emotional distress without impermissably intruding upon the broad reach of the federal regulatory scheme. The incorporation by reference of the ERISA facts into the tort claim by way of background does not disturb this result. Therefore, we hold that the pleadings, in their skeletal form, set out claims which were not "related" as that term is used in section 514(a) of ERISA. This result appears to be in keeping with the general objects of the Federal Rules of Civil Procedure, which "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

The only connection between Clark's tort claim and ERISA is that the conduct arose in a factual setting which overlapped that of Clark's ERISA claim. That is why the court took pendent jurisdiction over his claim. The mere existence of a common operative nucleus of facts giving rise to pendent jurisdiction, as here, is insufficient to render the tort claim "related" to the ERISA claim within the meaning of section 514(a). Because Clark's tort claim has no effect on the administration of any matter regarding an employee benefit plan, the claim is not preempted.

### Conclusion

We reverse that portion of the trial court's judgment dismissing Clark's ADEA claim. We affirm that portion of the trial court's judgment dismissing the claims for recovery of wages. We reverse that portion of the trial court's judgment dismissing the claims for reinstatement of employment and pension rights. We reverse that portion of the trial court's judgment dismissing Clark's claim for intentional infliction of emotional distress. We remand for further proceedings consistent with this opinion.

### Costs

Each party shall bear its own costs.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

JOHNSON, Circuit Judge, concurring specially:

I agree that plaintiff Clark's submission of a written employment discrimination questionnaire constituted a charge under 29 U.S.C.A. § 626(d). I also agree that under Georgia law, O.G.C.A. § 9–3–22 provides the proper statute of limitations for violation of an employee's rights under section 510 of ERISA, 29 U.S.C.A. § 1140. I write to concur specially in the majority's conclusion that plaintiff Clark's state law claim for intentional infliction of emotional distress is not preempted by section 514(a) of ERISA, 29 U.S.C.A. § 1144(a).

I emphasize that plaintiff's complaint asserts only a state law claim for intentional infliction of emotional distress based on the termination of his employment. Any facts relating to the anticipated reduction of his pension or retirement benefits included by the plaintiff in Count III of his complaint are not relevant to his state tort claim. Otherwise, the claim would be preempted by section 514(a) of ERISA, 29 U.S.C.A. § 1144(a). *Howard v. Parisian, Inc.,* 807 F.2d 1560 (11th Cir.1987) (holding that ERISA preempts state law claims for intentional infliction of emotional distress arising out of the termination of benefits from an employee benefit plan). With the understanding that plaintiff's state law claim does not relate in any way to the pension plan, I concur.