**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BETTY H. CARTER,
Plaintiff-Appellant,

v.

TIMES-WORLD CORPORATION; DEBRA
MEADE,
Defendants-Appellees.

No. 97-1823

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CA-96-709-R)

Submitted: April 30, 1998

Decided: May 27, 1998

Before MURNAGHAN and NIEMEYER, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Carr L. Kinder, Jr., KINDER & FOGEL, P.C., Roanoke, Virginia, for
Appellant. W. Fain Rutherford, Kerith Cohen, FLIPPIN, DENS-
MORE, MORSE, RUTHERFORD & JESSEE, Roanoke, Virginia, for
Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Betty H. Carter appeals from that portion of the district court's order denying relief on her claim of negligent infliction of emotional distress resulting from the manner of her termination from employment with Times-World Corporation. The district court judge stated that he did not believe that Carter could maintain such a cause of action under Virginia law, and further, if Carter could maintain such an action under state law, the court found it preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.A. §§ 1001-1461 (West 1985 & Supp. 1998). Finding no error, we affirm.

On review of a district court's order granting summary judgment, we construe the facts in the light most favorable to Carter. See Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). In January 1994, Carter suffered a non-work-related injury to her lower back. As a result of this injury, she was unable to return to her position as a telemarketing representative for Times-World. Carter provided Times-World with a note from her physician stating that she would be unable to work until February 14. From February 11 through July 15, 1994, Times-World voluntarily paid Carter under its informal sick leave policy. Times-World also sent Carter forms to apply for long-term disability coverage.

On February 14, Carter reported to work but left after two hours complaining of lower back pain. Her doctor provided another note saying that Carter should rest at home until February 24. In early March, Times-World received a further note from Carter's physician stating that she could return to work on March 9, 1994. Yet, on that day, Carter did not return to work. Debra Meade, the Human Resources Director for Times-World, sought a second opinion as to Carter's disability. Carter reluctantly agreed to a fitness for duty evaluation by Dr. Louis Castern.

2

After examining Carter with respect to her ability to work, Dr. Castern opined that she could return to work and stated that Times-World should try to accommodate her with light duty. Although Carter disagreed with this recommendation, Meade informed Carter that her physician had stated that she could return to work and that Times-World would accommodate her with light duty. Meade also informed Carter that if she did not return to work, Times-World could no longer provide benefits under the informal sick leave policy. Shortly after this conversation--which was six weeks after Carter initially went on leave--Times-World was informed for the first time that Carter had been seeing a psychiatrist for panic disorder with agoraphobia and major depression.

Meade, having become suspicious of the legitimacy of Carter's continuing need for sick leave, contacted a vocational rehabilitation firm to monitor Carter's treatment progress and a private investigation firm to perform surveillance on Carter. Carter was not cooperative with the vocational rehabilitation firm. On June 15, the investigation company observed and videotaped Carter getting into a car and riding to an automotive repair shop. There, Carter walked around, bent over, and moved about without apparent difficulty. On June 17, Carter was observed and videotaped going to a service station and a convenience store. She did not use any medical devices, and she appeared to have no difficulty moving.

Upon receipt of this information and the videotape, Meade requested that the vocational counselor ask Carter to describe her activities and capabilities during the time covered by the videotape. Carter stated that her psychologist restricted her to home for two months, except for doctors appointments. She admitted that she left home only once, on June 3, for an appointment. Carter also stated that she was in constant pain and was only comfortable when in the fetal position. She added that if she had to go out, she sometimes experienced a choking sensation, trembling, and sweaty hands.

Armed with this information, Meade contacted Carter on July 11 and requested that she meet with her the following day. Meade informed Carter that the purpose of the meeting was for Carter to explain the discrepancies between her claims and the evidence obtained by the investigation firm's surveillance. Carter initially

3

stated that she would attend, but, the following day, Carter called Meade and reported that she had panic disorder and could not attend the meeting. Meade replied that the meeting was urgent and that Carter's refusal to come to Times-World would leave her no alternative but to terminate Carter's employment for violations of the sick leave policy. Meade continued, explaining that Carter's failure to provide accurate information about her medical need for leave and her abuse of the sick leave policy were the reasons for her termination.

Carter filed an action in state court arising out of her termination. After Times-World and Meade removed the action to federal court, Carter amended her complaint to assert claims for wrongful discharge, failure to give notice, breach of contract, and negligent infliction of emotional distress. The district court granted summary judgment on all counts in favor of Times-World and Meade, finding that the claims fell within the provisions of ERISA, that they were barred by the one-year statute of limitations applicable to ERISA actions in Virginia, and that the state law claims were preempted by the express language of ERISA.

On appeal Carter concedes all but her claim for negligent infliction of emotional distress. She contends that this claim is not based on her wrongful discharge claim, and therefore it is not preempted by ERISA. Rather, she asserts, the claim is based on the manner in which she was treated before, during, and after she was discharged.

ERISA "supersedes all state laws insofar as they may now or hereafter relate to an employee benefit plan." 29 U.S.C.A. § 1144(a) (West Supp. 1998); see Stiltner v. Beretta U.S.A. Corp., 74 F.3d 1473, 1480 (4th Cir.), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3246 (U.S. Oct. 7, 1996) (No. 95-1793). Thus, Carter's claim for negligent infliction of emotional distress is preempted "if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983). The preemption provision in ERISA is intended to be construed broadly, and it extends to state law tort claims. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-48 (1987).

This court has previously noted that the federal courts are in agreement that state law claims of intentional infliction of emotional distress "based on the allegedly wrongful denial or termination of

4

benefits under an ERISA plan are preempted by ERISA." Stiltner, 74 F.3d at 1480 (citations omitted). However, the Eleventh Circuit has held that an employee's claim for emotional distress arising from his termination of employment, rather than from termination of benefits under an ERISA plan, is not preempted by ERISA. See Clark v. Coats & Clark, Inc., 865 F.2d 1237, 1243-44 (11th Cir. 1989). Because the portions of the record presented for this court's review are insufficient to determine whether Carter's claim of negligent infliction of emotional distress was based on the actions of Defendants in terminating her employment with Times-World or on the termination of her benefits under the ERISA plan, we decline to address whether this claim is preempted by § 1144(a).

Assuming, without deciding, that Carter's claim for negligent infliction of emotional distress falls outside the preemption provision of ERISA, we nonetheless find that summary judgment in favor of Times-World and Meade was proper. To prevail on a claim of negligent infliction of emotional distress in Virginia, Carter would have to show that she suffered a physical injury. See Hughes v. Moore, 197 S.E.2d 214, 219 (Va. 1973) (absent intent or physical impact, plaintiff cannot recover for mere emotional disturbance). In her amended complaint, Carter merely alleges that she suffered emotional distress. Also, in her affidavit and other evidence submitted in opposition to summary judgment, Carter does not assert that she suffered any physical symptoms from the actions of the Defendants of which she complains. Because Carter failed to present evidence that she suffered a physical injury as a result of the Defendants' conduct,* the district court properly determined that she could not maintain her claim for negligent infliction of emotional distress. See Hughes, 197 S.E.2d at 219; Bowles v. May, 166 S.E. 550, 557 (Va. 1932).

_____

*In her appellate brief, Carter asserts that the actions taken by Times-World and Meade exacerbated her physical and psychological problems. This statement was not before the district court, and therefore is not properly presented in this court. Moreover, this conclusory and unsupported statement is insufficient to meet Carter's burden--in opposition to a motion for summary judgment--of presenting some minimal evidence to show that summary judgment was not warranted. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

5

We accordingly affirm the district court's order granting summary judgment in favor of Times-World and Debra Meade on Carter's claim of negligent infliction of emotional distress. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6