Byron Charles SCRUGGS, Plaintiff,

v.

UNIVERSITY HEALTH SERVICES
d/b/a University Hospital,
Defendant.

No. CV199–194.

United States District Court,
S.D. Georgia,
Augusta Division.

Jan. 30, 2001.

John Paul Batson, Augusta, GA, Jack E. Boone, Jr., Augusta, GA, for Byron Charles Scruggs, plaintiff.

R. Perry Sentell, III, Kilpatrick Stockton, LLP, Augusta, GA, for University Health Services, Inc. dba University Hospital, defendant.

## ORDER

BOWEN, Chief Judge.

Before the Court in the captioned case is Defendant's motion for summary judgment on the limited issue of whether Plaintiff timely exhausted administrative remedies. A hearing took place on October 2, 2000. For the reasons given below, Defendant's motion is **GRANTED**.

### I. Background

Plaintiff is a white male. Plaintiff once worked for Defendant as a patient representative in the emergency room. Plaintiff has sued Defendant for reverse gender discrimination in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e – 2000e–17 ("Title VII"). Plaintiff claims that Defendant fired him because he is male. Defendant has moved for summary judgment, arguing that Plaintiff failed to file a timely charge of discrimination.

Plaintiff was fired on December 19, 1997. On December 30, 1997, Plaintiff brought his discharge to the attention of the Augusta–Richmond County Human Relations Commission ("the HRC"). (Hutto Dep. at 6.) The HRC is a designated "FEP agency" listed in 29 C.F.R. § 1601.74(a) The HRC has a "workshare agreement" with the federal Equal Employment Opportunity Commission ("the EEOC") whereby it has authority to receive charges on behalf of the EEOC. (Thomas Dep. at 12; Ex. 1 to Thomas Dep.) The EEOC actually pays the HRC to assist with complainant interviews and with filing charges. (Thomas Dep. at 24.) The parties agree that a charge filed with the HRC is deemed to be simultaneously filed with the EEOC. (*Id.* at 12, 19–20.)

Plaintiff completed a form entitled "Richmond County Human Relations Commission Affidavit." (Pl.'s Ex. A, attached to Doc. No. 22.) This intake affidavit is essentially a questionnaire. The HRC intake affidavit does not clearly indicate that Plaintiff was filing a charge of gender discrimination. Unlike the form used for a charge of discrimination, the HRC intake affidavit does not include a question which directs the charging party to indicate that he has suffered "discrimination" and to indicate the basis for the discrimination. (*See* Pl.'s Ex. D, attached to Doc. No. 22.) The intake affidavit asks the complainant to identify his harm and the party responsible. The last question asks what the complainant wants the HRC to do. It

directs the complainant to select from three options: (1) assistance in getting his job back, (2) "neutral references" (which apparently means help in assuring that the employer will not give unfairly negative references to other employers), and (3) "other."

In response to the question about the harm suffered, Plaintiff wrote that he had suffered reduced wages, reduced hours, and gender harassment, that he had lost his job, and that Defendant gave "bad references" to other employers. Plaintiff identified Defendant as the subject of his complaint. In response to a question about what caused his harm, Plaintiff explained that his supervisor, George Ann Phillips, humiliated him and provoked him. Plaintiff dared her to fire him. She then fired him. Plaintiff indicated that he wanted the HRC's help in procuring "neutral references." Plaintiff also wanted Defendant to provide a clear explanation for the decision to fire him. (*See* Scruggs Dep. at 132–33.) At the end of the intake affidavit, Plaintiff signed his name above a statement which reads, "Subscribed and affirmed before this HRC Representative."

After he filled out the HRC intake affidavit, Plaintiff met with Frank Hutto ("Hutto"), an HRC investigator. Plaintiff discussed his termination with Hutto. (Hutto Dep. at 10.) Plaintiff said that his supervisor gave female employees preferred schedules. (*Id.* at 12, 16; Ex. 4 to Thomas Dep.) Plaintiff claims he told Hutto that he had experienced gender discrimination. (Scruggs Dep. at 134.) Plaintiff further claims that Hutto said he would look into the situation. (*Id.*)

Hutto told Plaintiff that he "lacked an element of illegal discrimination." (Hutto Dep. at 37.) Plaintiff then reportedly replied that he merely wanted an explanation of his discharge and assurances that Defendant would not give negative references to future employers. (*Id.*) Hutto was under the impression that Plaintiff did not wish to file a formal charge of illegal discrimination. At the end of the interview, Hutto gave Plaintiff a notice given to all people who talk with the HRC. (*Id.* at 6.) The notice informed Plaintiff:

> During your initial visit an investigator will determine whether your complaint is jurisdictional for this agency. If your complaint is jurisdictional and is handled by this office you will be assigned an investigator who will contact you when necessary.

(Ex. 41 to Thomas Dep.)

Hutto does not consider the HRC intake affidavit to be a charge of discrimination. Hutto testified that he would have filed a charge of discrimination if Plaintiff had asked him to do so. (Hutto Dep. at 39.) According to Hutto, when people want to file a charge of discrimination, he tells them that they must complete other documents. (*Id.* at 64.)

At the meeting, Plaintiff also gave Hutto a thirteen-page narrative. (*Id.* at 6.) Addressed "to whom it may concern," this narrative is Plaintiff's rambling account of the events. (Pl.'s Ex. B, attached to Doc. No. 22.) The narrative primarily discusses scheduling changes at the hospital. On pages four, five, six, and eleven, the narrative suggests that female employees received preferred schedules. The narrative never alleges that Plaintiff's supervisor fired him because he is male. Hutto read this narrative several days later. (Hutto Dep. at 14.)

Hutto and the HRC continued working on the matter. (*See* Pl.'s Ex. C, attached to Doc. No. 22.) On January 15, 1998,

Frank Thomas ("Thomas"), Executive Director of the HRC, wrote Joseph Herzberg ("Herzberg"), Defendant's Personnel Director. (Ex. 6 to Thomas Dep.) Thomas's letter related Plaintiff's version of the events to Herzberg. The letter did not inform Defendant that Plaintiff wished to file a discrimination complaint. It reads in pertinent part:

> [Plaintiff] says that he is not seeking reinstatement, but that he would appreciate receiving a clear, detailed explanation both of the reason for his discharge and of the extent of the restrictions against his returning to the hospital, say, to receive treatment or to visit hospitalized friends or relatives. In addition, he says he would like to be assured that University Hospital's references on him will be kept good or no worse than neutral.

(*Id.*) Also, Hutto telephoned Plaintiff and advised him to discuss the matter with Herzberg. (Scruggs Dep. at 135.)

On January 8, 1998, Plaintiff mailed an eleven-page letter to Don Bray ("Bray"), Richard Parks ("Parks"), and Hank Flowers. (Ex. 1 to Scruggs Dep.) Respectively, they are Defendant's President, Vice President, and Chaplain. (*Id.*) The eleven-page letter is essentially a copy of the thirteen-page narrative that Plaintiff showed Hutto. Plaintiff did not allege in the letter that his supervisor fired him because he is male. Nor did he write that he wanted to file a charge of discrimination. The letter does refer to preferential treatment that women allegedly received.

Bray and Parks wrote back on January 14, 1998. (Ex. 8 to Thomas Dep.) In this letter, they told Plaintiff that Defendant has an established employee grievance procedure. (*Id.*) Defendant's employees normally must file their grievances within thirty days of the alleged injustice. (*Id.*) Because this thirty-day deadline was fast approaching, Bray and Parks agreed to extend the deadline for Plaintiff's benefit. (*Id.*)

On January 19, Plaintiff filed an internal grievance. (*See* Attachments to Ex. 31 to Thomas Dep.) On the grievance form supplied by Defendant, Plaintiff described the heated encounter which led to his termination. (*Id.*) Plaintiff wrote that he would be willing to take another job with Defendant. (*Id.*) Plaintiff wrote further that if there were no satisfactory jobs available, he wanted "any other possible assistance to return me to gainful employment and restore my family's welfare." (*Id.*) Plaintiff complained about his supervisor's "aggressive and abusive" behavior but never claimed that she fired him because he is male. (*Id.*)

Plaintiff received responses from his former supervisor and from her superior. (*See* Attachments to Ex. 32 to Thomas Dep.) Each submitted a lengthy memorandum recording her recollection of the events. Because Plaintiff believed that their accounts were caustic and unfair, he informally consulted a friend who is a local attorney. (Scruggs Dep. at 140.) Plaintiff testified in his deposition that this attorney simply "helped us during the grievance procedure." (*Id.*)

A hearing took place on April 17, 1998. (*See* Attachments to Ex. 30 to Thomas Dep.) Neither side had a lawyer. (Scruggs Dep. at 167.) The absence of counsel is consistent with Defendant's policy. (*See* Attachments to Ex. 31 to Thomas Dep.) The grievance committee consisted of three voting members and a non-voting chairman, all of whom are presumably Defendant's employees. (*See* Attachments to

Ex. 30 to Thomas Dep.) The committee interviewed Plaintiff, his supervisor, and her superior. (*Id.*) A former supervisor testified on Plaintiff's behalf. (*Id.*) Plaintiff complains that the committee refused to supplement its considerations with the testimony of a co-worker, who, as a result of a mistake, was unavailable at the time of the hearing. (*See* Scruggs Dep. at 166–70.) Plaintiff also asserts that a third witness was "intimidated to not testify." (Ex. 10 to Scruggs Dep.) There is no record of the proceedings and no account of the testimony and arguments given. Of note, Plaintiff has not alleged that he told the grievance committee that his termination was an act of unlawful discrimination. The grievance committee voted to uphold the decision to fire Plaintiff. (*See* Attachments to Ex. 30 to Thomas Dep.)

After the grievance hearing, Plaintiff's friend agreed to represent him as his attorney. (Scruggs Dep. at 140–41; *see* Ex. 10 to Scruggs Dep.) This attorney promised to "find out the best way we can file this or see what—if this investigator has done anything." (Scruggs Dep. at 143.) Plaintiff claims that this attorney never told him about filing a charge of discrimination with the EEOC. (*Id.* at 142.)

Plaintiff's attorney friend became unavailable because of health problems. (*Id.* at 143–44.) She referred Plaintiff to another local attorney, with whom he first talked in September 1998. (*Id.* at 135, 139.) This second attorney told Plaintiff that he needed to file a charge of discrimination with the EEOC. (*Id.*) According to Plaintiff, this September 1998 consultation was the first time that he learned of the need to file an EEOC charge. (*Id.*)

On September 28, 1998, Plaintiff contacted the Atlanta District Office of the EEOC. At this time, Plaintiff completed only an intake questionnaire, (Ex. 5 to Scruggs Dep.), and did not file a formal charge of discrimination. (Scruggs Dep. at 149–50.) In a letter dated October 6, 1998, the EEOC explained that it had no jurisdiction to investigate the matter because Plaintiff contacted the EEOC long after the expiration of the 180–day statute of limitations. (Ex. 15 to Thomas Dep.)

Plaintiff persisted. On December 28, 1998, Plaintiff wrote an acerbic letter to the HRC criticizing Hutto's handling of the case. (Ex. 10 to Scruggs Dep.) Plaintiff's chief complaint was that Hutto failed to tell him about the EEOC filing requirement. (Scruggs Dep. at 154.) Plaintiff also wrote his United States Congressman, Mr. Charles Norwood. On January 18, 1999, Congressman Norwood wrote the EEOC on Plaintiff's behalf. (Ex. 18 to Thomas Dep.) Also, Plaintiff's wife wrote about the matter to Romero Barcelo, an elected official in Puerto Rico. (Ex. F, attached to Doc. No. 23.)

On April 21, 1999, Plaintiff finally filed a charge of discrimination with the EEOC. (*See* attachments to Doc. No. 34.) Plaintiff asserted therein that "THIS CHARGE PERFECTS THE COMPLAINT I LODGED DEC. 30, 1997, AT THE AUGUSTA HUMAN RELATIONS COMMISSION." (*Id.*) On this form, Plaintiff accused Defendant of violating Title VII by firing him because of his gender and in retaliation for a lawful complaint he lodged. (*Id.*) Plaintiff completed the EEOC charge under oath. At this point, Plaintiff was apparently represented by his present counsel.

The Order of June 12, 2000 granted the parties' request to bifurcate the summary judgment process. The June 12 Order provided that the parties could first seek a ruling on whether Plaintiff timely exhaust-

ed his administrative remedies and later seek a ruling on the merits, if necessary. Now before the Court is Defendant's argument that Plaintiff failed to timely exhaust administrative remedies.

## II. Requirements for Summary Judgment

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the facts in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and must draw "all justifiable inferences in [its] favor," *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). How to carry this burden depends on who bears the burden of proof at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). If the *movant* bears the burden of proof at trial, that party "must show that, on all the essential elements of its case, ... no reasonable jury could find for the non-moving party." *Four Parcels*, 941 F.2d at 1438. On the other hand, if the *non-movant* has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-

movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. *Id.* at 1437–38. Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Jones v. City of Columbus*, 120 F.3d 248, 254 (11th Cir.1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir.2000).

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by demonstrating that a genuine issue of material fact precludes summary judgment. *Fitzpatrick*, 2 F.3d at 1116. Again, how to carry this burden depends on who bears the burden of proof at trial. If the *movant* has the burden of proof at trial, the non-movant may avoid summary judgment only by coming forward with evidence from which a reasonable jury could find in its favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. If the *non-movant* bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." *Fitzpatrick*, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evi-

dentiary deficiency." *Id.* at 1116–17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *See Morris v. Ross*, 663 F.2d 1032, 1033–34 (11th Cir.1981) Rather, the non-movant must respond by affidavits or as otherwise provided by Fed.R.Civ.P. 56.

The Clerk has given the non-moving party notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. No 14.) Therefore, the notice requirements of *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir.1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

### III. Analysis

■■■■ Before filing suit in district court, Title VII plaintiffs must first file a timely charge of discrimination with the EEOC. *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir.2000). The charge must be in writing under oath or affirmation. 42 U.S.C. § 2000e–5(b). The plaintiff must file this charge within 180 days of the allegedly unlawful employment action.[1] 42 U.S.C. § 2000e–5(e)(1). The purpose of the limitation period is to encourage prompt resolution of discrimination claims. *Mohasco Corp. v. Silver*, 447 U.S. 807, 825, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). These time limits are subject to equitable modification. *Zipes v. Trans*

*World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

Defendant argues that Plaintiff failed to file a timely charge of discrimination. Plaintiff counters that the HRC intake affidavit satisfies the charge requirement and, in the alternative, that equitable tolling doctrines should spare his claim.

The charge of discrimination filed with the EEOC on April 21, 1999 was untimely. This filing did not satisfy the statutory requirement because it took place 488 days after Plaintiff's termination.[2] As a result, there are only two ways that Plaintiff's case can survive summary judgment. One is to show that the HRC intake affidavit that he completed on December 30, 1997 constitutes a "charge" within the meaning of 42 U.S.C. § 2000e–5(e)(1).[3] The other way is to show that equitable tolling doctrines excuse his tardy filing.

### A. Whether the HRC Intake Affidavit is a Charge

■■■■ Defendant offers two arguments that the HRC intake affidavit does not satisfy the charge requirement. First, Defendant contends that the intake affidavit does not manifest an intent to file a charge of discrimination. Second, Defendant argues that the intake affidavit was not sworn as required by 42 U.S.C. § 2000e–5(b).

A charge of discrimination must be in a form prescribed by the EEOC. 42 U.S.C.

---

1. The parties have presented neither evidence nor argument that the alternative 300–day period is the applicable period of limitation.

2. Plaintiff's termination became final on December 19, 1997. On this date, the applicable limitation period began to run. The pendency of the grievance hearing did not toll the running of the limitation period. *Stafford v. Muscogee County Bd. of Educ.*, 688 F.2d 1383,

1388 (11th Cir.1982) (citing *Delaware State College v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)).

3. Other than the EEOC filing of April 21, 1999, this is the only document that Plaintiff has identified as a charge.

§ 2000e–5(b) Under the EEOC's regulations, a charge should contain this information:

1) the name, address, and telephone number of the claimant;

2) the name, address, and telephone number of the respondent;

3) a concise statement of the facts, including dates;

4) the number of people employed by the respondent; and

5) whether any other related proceedings are ongoing.

29 C.F.R. § 1601.12(a). If a writing fails to satisfy these requirements, it may nevertheless constitute a charge if it precisely identifies the parties and "describe[s] generally the action or practices complained of." 29 C.F.R. § 1601.12(b). The requirements for the sufficiency of a charge are "very minimal." *Equal Employment Opportunity Comm'n v. Mississippi College,* 626 F.2d 477, 483 (5th Cir.1980).[4]

At least one purpose of the charge requirement is to give employers fair notice of discrimination claims. *Equal Employment Opportunity Comm'n v. Shell Oil Co.,* 466 U.S. 54, 74, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984) (discussing charges filed by the EEOC). Thus, a charge must "be of a kind that would convince a reasonable person that the plaintiff manifested an intent to activate [Title VII's] machinery." *Downes v. Volkswagen of Amer., Inc.,* 41 F.3d 1132, 1138 (7th Cir.1994).

The HRC intake affidavit does not give any information about related proceedings. (*See* Pl.'s Ex. A, attached to Doc. No. 22.)

Therefore, it does not satisfy the requirements of 29 C.F.R. § 1601.12(a). Nor does it satisfy the more permissive requirements of 29 C.F.R. § 1601.12(b). The HRC intake affidavit does not evidence an intent to file a charge of discrimination.

In the HRC intake affidavit, Plaintiff complained that his supervisor fired him and that Defendant's personnel director refused to intervene on his behalf. (Pl.'s Ex. A, attached to Doc. No. 22.) Plaintiff wrote that he wanted only an explanation for his discharge, assurances that Defendant would give other employers "good or neutral references," and a clarification of when and under what circumstances he could visit the hospital. (*Id.*) Plaintiff never indicated on the HRC intake affidavit that Defendant fired him because he is male.

Particularly revealing is the content of the thirteen-page narrative, in which Plaintiff recounts his allegations in exhausting detail. In passing, Plaintiff asserted that women received preferred work schedules. (*See* Pl.'s Ex. B, attached to Doc. No. 22.) Conspicuously absent from this detailed account is any accusation that Defendant terminated Plaintiff because of his gender—the claim now before the Court and which Plaintiff should have timely presented to an administrative agency.

Plaintiff claims that he told Hutto that he experienced gender discrimination, (Scruggs Dep. at 134), but Plaintiff never reduced this belief to writing until September 28, 1998 at the earliest. (*See* Ex. 5 to Scruggs Dep.) Neither the HRC intake affidavit nor the thirteen-page narrative

---

**4.** The Eleventh Circuit adopted as binding precedent all Fifth Circuit cases decided before September 30, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

evidence an intent to activate the machinery of Title VII. They show that Plaintiff's discriminatory termination claim is better understood as an afterthought injected into the dispute long after the period of limitation expired.

In some circumstances, an intake affidavit can satisfy the charge requirement. In *Clark v. Coats & Clark, Inc.*, 865 F.2d 1237 (11th Cir.1989), the Eleventh Circuit held that an EEOC intake questionnaire satisfied the ADEA's charge requirement where the employer received notice that the plaintiff had filed a charge of age discrimination. Here, by contrast, Defendant never learned that Plaintiff was claiming gender discrimination until nearly sixteen months after his termination. Importantly, Plaintiff had ample opportunity to allege gender discrimination at the April 1998 grievance hearing but apparently did not do so. (*See* Ex. 30 to Thomas Dep.) The HRC intake affidavit failed to satisfy the purpose of the charge requirement, which is to notify employers of accusations of discrimination. *Clark*, 865 F.2d at 1241.

Furthermore, the *Clark* case does not stand for the proposition that any intake affidavit satisfies Title VII's charge requirement.[5] It does not vitiate the charge requirement but instead affirms that a charge must contain any and all accusations of discrimination. A charge still must indicate an intent to activate Title VII's machinery. The *Clark* case does not validate the HRC intake affidavit.

### B. Whether Equitable Tolling Doctrines are Available

▮▮▮▮ Title VII's limitation periods are subject to waiver, estoppel, and equitable

tolling. *Zipes*, 455 U.S. at 393, 102 S.Ct. 1127. Waiver permits a suit where the defendant forgoes its right to assert the defense of untimeliness. For example, failure to assert the defense of untimeliness in defensive pleadings could waive that defense. *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1012 (11th Cir.1982). Equitable estoppel excuses an untimely charge where there has been some misconduct on the part of the defendant. *Browning v. AT & T Paradyne*, 120 F.3d 222, 226 (11th Cir.1997) (per curiam). Equitable tolling does not involve misconduct on the part of the defendant but instead concerns whether the plaintiff excusably failed to satisfy the time requirement. *Id.* Whether to apply these doctrines depends on the facts, circumstances, and equities of each case. *McClinton v. Alabama By–Products Corp.*, 743 F.2d 1483, 1485 (11th Cir.1984). Plaintiff bears the burden of proving that equitable doctrines apply. *Carter v. West Publishing Co.*, 225 F.3d 1258, 1265 (11th Cir.2000).

Plaintiff has not satisfied this burden. The only argument offered is that Hutto lulled Plaintiff into inaction by telling him that his allegations "lacked an element of illegal discrimination." (*See* Hutto Dep. at 37.) Plaintiff complains that Hutto did not tell him about the charge requirement and thereby failed to preserve his right to judicial redress. Plaintiff misconstrues the role of agencies like the HRC and the EEOC. Their purpose is not to assure every potential plaintiff a day in court. Instead, their purpose is to help eliminate unlawful discrimination through informal methods of conciliation. *Clark*, 865 F.2d at 1241. Furthermore, an attorney repre-

---

**5.** A decision from the Middle District of Georgia has admonished against extending the *Clark* decision into the Title VII context. *Pi-* *jnenberg v. West Ga. Health Sys., Inc.*, No. Civ. A. 498–CV–187 JRE, 2000 WL 555987 (Mar. 20, 2000).

sented Plaintiff for part of the time that the period of limitation was running, and this fact weighs against equitable tolling. *Edwards v. Kaiser Aluminum & Chem. Sales, Inc.*, 515 F.2d 1195, 1200 n. 8 (5th Cir.1975).

### IV. Conclusion

Upon the foregoing, Defendant's summary judgment motion (Doc. No. 12) is **GRANTED.** Plaintiff's motion (Doc. No. 33) to reconsider the Order of July 20, which allowed Defendant to file a reply brief, is **DENIED.** The Clerk is instructed to **CLOSE** this case and to enter **FINAL JUDGMENT** in favor of Defendant. Costs are taxed against Plaintiff.